No. 12-41187

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

**BRADLEY KOENNING, BRIAN MARTIN, and MORGAN RYALS**

**Plaintiffs-Appellees**

v.

**KYLE JANEK, in his official capacity as EXECUTIVE COMMISSIONER
of the TEXAS HEALTH AND HUMAN SERVICES COMMISSION**

**Defendant-Appellant**

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, VICTORIA DIVISION
CIVIL ACTION NO. 6:11-CV-00006

_____

### APPELLEES' BRIEF

MAUREEN O'CONNELL
Texas Bar No. 00795949
Southern Disability Law Center
1307 Payne Avenue
Austin, TX 78757
(512) 458.5800 Phone
(512) 458.5850 Fax

MARYANN OVERATH
Texas Bar No. 00786851
1404 Crestwood Rd.
Austin, TX 78722
(512) 587.1614 Phone
(512) 597-4163 Fax

**COUNSEL FOR APPELLEES**

SARAH JANE SOMERS
North Carolina Bar No. 33165
MARTHA JANE PERKINS
North Carolina Bar No. 09993
National Health Law Program, Inc.
101 E. Weaver St.
Carrboro, NC 27510
(919) 968-6308 Phone
(919) 968-8855 Fax

LEWIS GOLINKER
New York Bar No.101819
401 East State Street, Suite 300
Ithaca, New York 14850
(607) 277-7286 Phone
(607) 277-5239 Fax

# CERTIFICATE OF INTERESTED PERSONS

(1)     No. 12-41187; *Bradley Koenning, Brian Martin, and Morgan Ryals v. Kyle Janek, in his official capacity as Executive Commissioner of the Texas Health and Human Services Commission.*

(2)     The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:**
Bradley Koenning
Brian Martin
Morgan Ryals

**Defendant-Appellant:**
Thomas Suehs/Kyle Janek
Texas Health and Human Services Commission

**Defendant's Contracted Agent**
Texas Medicaid and Healthcare Partnership

**Attorneys for Plaintiffs-Appellees**:
Maureen O'Connell, Southern Disability Law Center
Maryann Overath
Sarah Jane Somers, National Health Law Project
Martha Jane Perkins, National Health Law Project
Lewis Golinker

**Attorneys for Defendant-Appellant:**
Jonathan F. Mitchell, Solicitor General for the State of Texas
Rance L. Craft, Assistant Solicitor General for the State of Texas

i

Douglas D. Geyser, Assistant Solicitor General for the State of Texas
Michael P. Murphy, Assistant Solicitor General for the State of Texas
Drew Harris, Assistant Attorney General for the State of Texas

 /s/ Maureen O'Connell
MAUREEN O'CONNELL

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs agree with the Commissioner's request for oral argument to assist the Court in its analysis of the constitutional and statutory issues raised in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS.........................................................................iv

TABLE OF AUTHORITIES .................................................................. vii

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE CASE...................................................................2

STATEMENT OF THE FACTS ................................................................4

    A.   Statutory and Regulatory Background...................................................4

    B.   The Plaintiffs...........................................................................5

STANDARD OF REVIEW ....................................................................12

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT .......................................................................................14

    I.    The District Court Correctly Held that Plaintiffs Have the Right to Enforce Medicaid's "Reasonable Standards" and "Amount, Duration, and Scope" Requirements ..................................16

        A.   Fifth Circuit Precedent Recognizes There is an Implied Right of Action to Enforce the Supremacy Clause.......................................................................16

        B.   This Circuit's Decision in *Planned Parenthood of Houston & Southeast Tex. v. Sanchez* is Consistent with Supreme Court Precedent and Should Neither Be Overruled Nor Limited to its Facts......................................21

II.    State Officials Must Follow the Requirements of the
       Federal Medicaid Act, Implementing Regulations, and
       Written Guidance From the Federal Medicaid Agency ......................23

III.   There is No Conflict With *Pennhurst's* "Clear Statement
       Rule" ...........................................................................................28

IV.    The District Court Correctly Held THHSC's Express
       Exclusion of Power Wheelchairs With Standing Features
       is Preempted by the Medicaid Act ........................................................30

       A.    THHSC Policy Expressly Excluding Power
             Wheelchairs with Standing Features Absent a
             Medical Rationale is Unlawful ...................................................30

       B.    THHSC's Power Wheelchair with Standing
             Feature Policy Conflicts with Federal Medicaid
             Policy .............................................................................................35

       C.    The Commissioner's Power Wheelchair with
             Standing Feature Policy Violates Federal Law ........................39

V.     The District Court Correctly Denied the Commissioner's
       Motion for Summary Judgment ............................................................40

VI.    The District Court Was Not Required to Abstain and
       Refer This Case to CMS ........................................................................45

VII.   The District Court Correctly Held that THHSC Violated
       Plaintiffs' Due Process Rights ..............................................................47

       A.    THHSC's Policies and Procedures Violate
             Procedural Due Process ...............................................................48

       B.    Plaintiffs Were Not Required to "Use THHSC's
             Fair Hearing and Judicial Review Mechanisms" ....................53

       C.    Plaintiffs Have a Protected Property Interest in
             Their Medicaid Benefits ..............................................................54

VIII.  The District Court's Judgment and Remand are Proper .....................57

CONCLUSION ........................................................................................................58

CERTIFICATE OF SERVICE ...............................................................................60

CERTIFICATE OF ELECTRONIC COMPLIANCE............................................61

CERTIFICATE OF COMPLIANCE.......................................................................62

# TABLE OF AUTHORITIES

## CASES

*Ability Center of Toledo v. Lumpkin*,
    808 F. Supp. 2d. 1003 (N.D. Ohio 2011) ...........................................55

*Affiliates, Inc. v. Armstrong*,
    2011 WL 3421407 (D. Idaho Aug. 4, 2011)......................................46

*Alexander v. Sandoval*,
    532 U.S. 275 (2001).....................................................................19, 20

*Alvarez v. Betlach*,
    CV 09-558 TUC AWT (D.Ariz. May 21, 2012) ...............................32

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................12, 40

*Apache Corp. v. W&T Offshore, Inc.*,
    626 F.3d 789 (5th Cir. 2010) .............................................................12

*Ark. Dep't of Health & Human Servs. v. Ahlborn*,
    547 U.S. 268 (2006)......................................................................24, 25

*Arlington Ctr. School Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006)............................................................................28

*Barnes v. Gorman*,
    536 U.S. 181 (2002)............................................................................25

*Bell v. Agency for Health Care Admin.*,
    768 So.2d 1203 (Fla. App. 1 Dist. 2000)............................................39

*Bennett v. Ky.*,
    470 U.S. 656 (1985)............................................................................28

*Blue v. Bonta*,
    121 Cal. Rptr.2d 483 (Cal. App. 2002)...............................................32

*Brisson v. Dep't of Pub. Welf.*,
    702 A.2d 405 (Vt. 1997) ......................................................................32

*Brown v. Ames*,
    201 F.3d 654 (5th Cir. 2000) ...............................................................15

*City of Dallas, Tx v. Hall*,
    563 F.3d 712 (5th Cir. 2009) ...............................................................15

*Conley v. Dept. of Health*,
    2012 WL 4450154 (Utah App. Sept. 27, 2012)....................................32

*Conn. Dep't of Pub. Safety v. Doe*,
    538 U.S. 1 (2003).................................................................................50

*Curtis v. Taylor*,
    625 F.2d 645 (5th Cir. 1980) ...............................................................53

*Dartmouth-Hitchcock Clinic v. Toumpas*,
    2012 WL 4482857 (D.N.H. Sept. 27, 2012)........................................46

*DeSario v. Thomas*,
    139 F.3d 80 (2d Cir. 1998) ........................................... 29, 35, 36, 37, 38, 39, 53

*District of Columbia Court of Appeals v. Feldman*,
    460 U.S. 462 (1982).............................................................................57

*Doc's Clinic, APMC v. Louisiana ex rel. Dept. of Health and Hosps.*,
    2009 WL 3199192 (M.D. La. Sept. 29, 2009)......................................53

*Doe v. Kidd*,
    419 F. App'x 411 (4th Cir. 2011) ........................................................22

*Douglas v. Independent Living Center*,
    132 S. Ct. 1204 (2012)..........................................................21, 22, 45, 46

*El Paso Natural Gas Co. v. Sun Oil Co.*,
    708 F.2d 1011 (5th Cir. 1983) .............................................................45

*Elizabeth Blackwell Health Ctr. for Women v. Knoll*,
  61 F.3d 170 (3d Cir. 1995) .................................................................17

*Equal Access Education v. Merten*,
  305 F. Supp. 2d 585 (E.D. Va. 2004) ..............................................23

*Esteban v. Cook*,
  77 F. Supp. 2d 1256 (S.D.Fla. 1999) ...............................................39

*Ex Parte Young*,
  209 U.S. 123 (1908)..........................................................................58

*Featherston v. Stanton*,
  626 F.2d 591 (7th Cir. 1980) ............................................................55

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
  458 U.S. 151 (1982)..........................................................................16

*Fishman v. Daines*,
  743 F. Supp. 2d. 127 (E.D. N.Y 2010) .............................................56

*Fred C. v. Texas Health & Hum. Serv. Comm'n*,
  167 F.3d 537 (5th Cir. 1998) ..................................30, 31, 32, 34, 57

*Frew ex rel. Frew v. Hawkins*,
  540 U.S. 431 (2004)..........................................................................23

*Galloway v. Louisiana*,
  817 F.2d 1154 (5th Cir. 1987) ..........................................................54

*Georgia Latino Alliance for Hum. Rights v. Gov. of Georgia*,
  691 F.3d 1250 (11th Cir. 2012) ........................................................18

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)...............................................................48, 55, 56

*Golden Transit Corp. v. City of Los Angeles*,
  493 U.S. 103 (1989)..........................................................................16

*Gray Panthers v. Schweiker*,
    652 F.2d 146 (D.C. Cir. 1980)...........................................................................54

*Hamby v. Neel*,
    368 F.3d 549 (6th Cir. 2004) ...........................................................................56

*Harris v. McRae*,
    448 U.S. 297 (1980)..........................................................................................23

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ..............................................................................40

*Hiltibran v. Levy*,
    793 F. Supp. 2d 1108 (W.D. Mo. 2011).......................................................32, 35

*Hope Med. Group for Women v. Edwards*,
    63 F.3d 418 (5th Cir. 1995) ..............................................................24, 31, 32, 34

*Horne v. Flores*,
    557 U.S. 433 (2005).............................................................................19, 20, 21, 22

*Hunter v. Chiles*,
    944 F. Supp. 914 (S.D. Fla. 1996) .....................................................................32

*In re Goff*,
    812 F.2d 931 (5th Cir. 1987) .............................................................................15

*Jasset v. R.I. Dept. of Hum. Serv.*,
    2006 WL 2169891 (R.I. Super. July 31, 2006) .................................................32

*Johnson v. Minn. Dep't of Human Services*,
    565 N.W. 2d 453 (Minn. App. 1997) .................................................................45

*Jonathan C. v. Hawkins*,
    2006 WL 3498494 (E.D. Tex. Dec. 5, 2006) ................................................55, 56

*Jones v. Blinziner*,
    536 F. Supp. 1181 (D. Ind. 1982).....................................................................54

*Ladd v. Thomas*,
    962 F. Supp. 284 (D. Conn. 1997).......................................................................57

*Lankford v. Sherman*,
    451 F.3d 509 (8th Cir. 2006) ...............................................................17, 32, 39

*League of Women Voters v. Blackwell*,
    340 F. Supp. 2d 823 (N.D. Ohio 2004) ............................................................23

*Ledet v. Fischer*,
    548 F. Supp. 775 (M.D. La. 1982).....................................................................53

*Lewis v. Alexander*,
    685 F.3d 325 (3d Cir. 2012) ........................................................................18, 22

*Lividas v. Bradshaw*,
    512 U.S. 107 (1994)............................................................................................23

*Loyal Tire and Auto Ctr., Inc. v. Town of Woodbury*,
    445 F.3d 136 (2d Cir. 2006) ..............................................................................18

*Maine v. Thiboutot*,
    448 U.S. 1 (1980)........................................................................................19, 20

*Marcus v. St. Paul Fire & Marine Insurance Co.*,
    651 F.2d 379 (5th Cir. 1981) .............................................................................12

*Mass. v. Sebelius*,
    701 F. Supp. 2d 182 (D. Mass. 2010)................................................................28

*Mayer v. Wing*,
    922 F. Supp. 902 (S.D.N.Y. 1996) ...................................................................56

*McCartney v. Cansler*,
    608 F. Supp. 2d 694 (E.D. NC, 2009) ..............................................................55

*Meyers v. Reagan*,
    776 F. 2d at 244 ................................................................................................57

*Miller ex rel. Morrish v. Olszewski*,
 2009 WL 5201792 (E.D. Mich. Dec. 21, 2009) ..................................................46

*Mitchell v. Johnston*,
 701 F.2d 337 (1983)..........................................................................................24

*National Federation of Independent Businesses (N.F.I.B.) v. Sebelius*,
 132 S. Ct. 2566 (2012)..................................................................................25, 26

*Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*,
 389 F.3d 491 (5th Cir. 2004) .............................................................................12

*New Orleans & Gulf Coast Ry. Co. v. Barrois*,
 533 F.3d 321 (5th Cir. 2008) .............................................................................17

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
 461 U.S. 190 (1983)............................................................................................17

*Patsy v. Bd. of Regents*,
 457 U.S. 496 (1982)............................................................................................54

*Pennhurst State Sch. & Hosp. v. Halderman*,
 451 U.S. 1 (1981)................................................................................................28

*Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*,
 195 F.3d 975 (7th Cir. 1999) .............................................................................57

*Perry v. Chen*,
 985 F. Supp. 1197 (D. Ariz. 1996) .....................................................................56

*Pharm. Research and Mfrs. of America v. Concannon*,
 249 F.3d 66 (1st Cir. 2001)................................................................................18

*Pharm. Research & Mfrs. of America v. Thompson*,
 362 F.3d 817 (D.C. Cir. 2004)............................................................................18

*Planned Parenthood of Houston & S.E. Tex. v. Sanchez*,
 403 F.3d 324 (5th Cir. 2005) ..........................................................17, 20, 21, 22

*Rathjen v. Litchfield*,
   878 F.2d 836 (5th Cir. 1989) ...............................................................54

*Regents of the Univ. of Cal. v. Bakke*,
   438 U.S. 265 (1978)..............................................................................27

*Rush v. Parham*,
   625 F.2d 1150 (5th Cir. 1980) .....................................30, 31, 32, 34

*Shaw v. Delta Air Lines*,
   463 U.S. 85 (1983)................................................................................16

*Singleton v. Wulff*,
   428 U.S. 106 (1976)..............................................................................15

*Sorrentino v. Novello*,
   295 A.D.2d 945 (N.Y 2002) .................................................................44

*Stewart v. Bailey*,
   556 F.2d 281 (5th Cir. 1977) ...............................................................54

*Technical Automation Services Corp. v. Liberty Surplus Ins. Corp.*,
   673 F.3d 399 (5th Cir. 2012) ...............................................................21

*T.L. v. Colo. Dept. of HealthCare Policy & Fin.*,
   42 P.3d 63 (Colo. App. 2001).....................................................39, 57

*Wagner & Brown v. ANR Pipeline Co.*,
   837 F.2d 199 (5th Cir. 1988) ...............................................................45

*Weaver v. Reagen*,
   886 F.2d 194 (8th Cir. 1989) ...............................................................35

*Wilder v. Va. Hosp. Ass'n*,
   496 U.S. 498 (1990)......................................................................24, 25

*Will T. v. Taylor*,
   465 F. Supp. 2d 1267 (N.D. Ga. 2000)..............................................39

## STATUTES AND REGULATIONS

23 U.S.C. § 158(a)(1)(A) ........................................................................27

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 2106 ....................................................................................2

42 U.S.C. § 1396 ....................................................................................4

42 U.S.C. § 1396a(a)(3) ..............................................................3, 48, 55

42 U.S.C. § 1396a(a)(10) .......................................................................4

42 U.S.C. § 1396a(a)(10)(A)(i)(VIII) ...................................................25

42 U.S.C. § 1396a(a)(10)(D) .................................................................4

42 U.S.C. § 1396a(a)(17) ..........................................3, 5, 13, 30, 34

42 U.S.C. § 1396c .............................................................................24, 27

42 U.S.C. § 1396d(a) ........................................................................4, 29

42 U.S.C. § 1396w-5 ..............................................................................4

42 U.S.C. § 1396-1................................................................................4

42 U.S.C. § 1983 ...........................................................................17, 22, 53

42 U.S.C. § 2000d-1................................................................................27

42 U.S.C. § 2000cc .................................................................................27

42 C.F.R. § 431.200 *et seq*......................................................................3

42 C.F.R. § 431.205(d) ...........................................................................55

42 C.F.R. § 440.70(b)(3)..........................................................................4

42 C.F.R. § 440.210(a)(1) ...................................................................4

42 C.F.R. § 440.230(b) ...............................................3, 5, 13, 30, 34

42 C.F.R. § 441.15 ............................................................................4

1 TEX. ADMIN. CODE § 354(a)(4)(D) ...........................................11

1 TEX. ADMIN. CODE § 354.1031(b)(12) ........................................6

1 TEX. ADMIN. CODE § 354.1039(a)(4)(D) ...............................11, 51

1 TEX. ADMIN. CODE § 357.23(e) ...............................................49

Conn. Admin. Reg. § 17b-262-716 (a)(4) .....................................39

## CONSTITUTIONAL PROVISIONS

U.S. CONST. art. VI, cl 2 ...........................................................3, 16

U.S. CONST. amend XIV ................................................................3

## OTHER AUTHORITIES

2010 TMPPM Children's Services Handbook, §3.5.2 .......................6

2010 TMPPM DME Handbook, §1.2.2 .............................................6

2011 TMPPM DME Handbook, §2.2.2 ............................................41

2011 TMPPM DME Handbook, §2.2.14.27 .......................................5

JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.41[3][d]
    (3d Ed. 2003) ...........................................................................12

No. 12-41187
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

**BRADLEY KOENNING, BRIAN MARTIN, and MORGAN RYALS**

**Plaintiffs-Appellees**

v.

**KYLE JANEK, in his official capacity as EXECUTIVE COMMISSIONER of the TEXAS HEALTH AND HUMAN SERVICES COMMISSION**

**Defendant-Appellant**
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CIVIL ACTION NO. 6:11-CV-00006
_____

**APPELLEES' BRIEF**
_____

Plaintiffs-Appellees BRADLEY KOENNING, BRIAN MARTIN, and MORGAN RYALS request this Court to affirm the district court's memorandum opinion, order and final judgment and in support respectfully show the following:

## STATEMENT OF JURISDICTION

The U.S. District Court for the Southern District of Texas entered its Memorandum Opinion and Order and Final Judgment on September 18, 2012.

(USCA5 793-835)  This Court has appellate jurisdiction over this final judgment under 28 U.S.C. § 1291 and authority to affirm pursuant to 28 U.S.C § 2106.

## STATEMENT OF THE CASE

Plaintiffs are young adults with significant physical disabilities who require custom power wheelchairs with integrated standing features (called "mobile standers" in the district court) to meet their mobility and medical needs.  (USCA5 800-802)  For more than two decades, individuals with severe disabilities have used these wheelchairs to prevent, correct, or ameliorate the numerous secondary medical complications they face due to hours of prolonged sitting every day. (USCA5 217)  Power wheelchairs with standing features enable these individuals to independently stand throughout the day at home or in the community.  (USCA5 799, 217) The Executive Commissioner (the Commissioner) of the Texas Health and Human Services Commission (THHSC) recognizes the value of these wheelchairs as THHSC covers them for beneficiaries younger than 21 years of age. (USCA5 818, 440-448)

In 2010, THHSC, through its agent, the Texas Medicaid and Healthcare Partnership (TMHP), denied Plaintiffs' requests for the power wheelchairs with standing features recommended by their treating medical professionals based solely upon a THHSC policy that expressly excludes these wheelchairs from Medicaid coverage.  USCA5 801-802, 380-387)

On February 15, 2011, Plaintiffs filed this lawsuit against THHSC's Commissioner in his official capacity. (USCA5 8-24) THHSC is the single state agency responsible for the Texas Medicaid program.  Plaintiffs alleged that THHSC's policy excluding power wheelchairs with standing features from Medicaid coverage is preempted by the Supremacy Clause of the U.S. Constitution, U.S. CONST. art. VI, cl 2, because it conflicts with the Medicaid Act's reasonable standards requirement, 42 U.S.C. § 1396a(a)(17), and implementing amount duration and scope rule, 42 C.F.R. § 440.230(b).

Plaintiffs further alleged that THHSC's policy exclusion of power wheelchairs with standing features, in conjunction with its fair hearing policies and procedures, deprived them of meaningful hearings consistent with the due process protections afforded by the Fourteenth Amendment to the U.S. Constitution, the Medicaid Act, and implementing regulations. U.S. CONST. amend. XIV; 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.200-250.

Plaintiffs' legal claims and their arguments in support were neither new nor novel.  This Circuit and numerous other courts have uniformly held that state Medicaid programs cannot lawfully exclude items of durable medical equipment (DME) for reasons unrelated to medical need when the item fits within the definition of a service category in the state's Medicaid plan.  (USCA5 813-822) On September 18, 2012, the district court entered partial summary judgment for

3

Plaintiffs and denied THHSC's motion for summary judgment.  The court enjoined THHSC from enforcing its policy exclusion of power wheelchairs with standing features without regard to medical necessity.  (USCA5 793-835) Further, the district court remanded the resolution of Plaintiffs' eligibility for these wheelchairs to THHSC's prior authorization agent.  THHSC appealed this decision on October 18, 2012.  (USCA5 925-926)

## STATEMENT OF THE FACTS

### A.    Statutory and Regulatory Background

In 1965, Congress created the Medicaid program.  42 U.S.C. §§ 1396-1396w-5.  A central purpose of Medicaid is to enable each State, "as far as practicable…to furnish (2) rehabilitation and other services to help…individuals attain or retain capability for independence or self-care." 42 U.S.C. § 1396-1.

The Medicaid Act requires participating states to cover some services and allows coverage of others.  See 42 U.S.C. §§ 1396a(a)(10), 1396d(a).  Among the mandatory services for most beneficiaries are home health services.  42 U.S.C. § 1396a(a)(10)(D); 42 C.F.R. § 440.210(a)(1).  These services must include "medical supplies, equipment, and appliances suitable for use in the home."  42 C.F.R. §§ 440.70(b)(3), 441.15.  This benefit is often referred to as DME and includes a variety of equipment, including various types of wheelchairs.

Another Medicaid provision, the reasonable standards requirement, 42 U.S.C. § 1396a(a)(17), provides that the state's Medicaid program must:

> include reasonable standards (which shall be comparable for all groups…) for determining…the extent of medical assistance under the plan....

*See also* 42 C.F.R. § 440.230(b) (requiring each service to be sufficient in amount duration and scope).

## B.     The Plaintiffs

Plaintiffs Bradley, Brian, and Morgan are Medicaid beneficiaries with severe physical disabilities who must rely on custom power wheelchairs for independent mobility.  In 2010, THHSC denied Plaintiffs the power wheelchairs recommended by their treating medical professionals because these wheelchairs have integrated standing features and are excluded from Medicaid coverage.  (USCA5 380-387) According to THHSC policy, "[m]obile standers, power standing system on a wheeled mobility device…are not a benefit of Home Health Services.   2011 TMPPM DME Handbook, §2.2.14.27.[1]  (USCA5 207)  Yet, these wheelchairs fit squarely within THHSC's definition of DME.  (USCA5 822) By rule, DME is broadly defined as:

---

[1] THHSC's Medicaid policy is published in the Texas Medicaid Providers Procedure Manual (TMPPM).  *See http://www.tmhp.com/Pages/Medicaid/Medicaid_home.aspx.*

m]achinery or equipment which meets one or both of the following criteria: (A) the projected term of use is more than one year; or (B) reimbursement is made at a cost more than $1,000.[2]

THHSC policy further defines DME as:

Medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness.[3]

THHSC's DME definitions are identical for adults and children. *Compare,* 2010 TMPPM DME Handbook, §1.2.2 (USCA5  305); 2010 TMPPM Children's Services Handbook, §3.5.2 (USCA5 311). Nonetheless, THHSC approves power wheelchairs with standing features for beneficiaries under 21 years of age, but denies them to beneficiaries 21 years of age and older.  (USCA5 818, 440-448)  At the time TMHP denied Plaintiffs' wheelchair requests, Bradley was 23, Brian was 27, and Morgan was 24 years old.

The district court found that "substantial evidence" supported Plaintiffs' medical need for power wheelchairs with standing features. (USCA5 833) Bradley has quadriplegia and cannot walk due to a C-4 spinal cord injury he sustained in a motocross accident as a teenager.  He has no volitional movement below his shoulders and no functional use of his hands.  (USCA5 800)  Like Bradley, Brian is diagnosed with quadriplegia: he is unable to walk and has limited use of his arms

---

[2] 1 TEX. ADMIN. CODE § 354.1031(b)(12).

[3] 2010 TMPPM DME Handbook, §1.2.2  (USCA5 305)

and hands due to a C2/C3 spinal cord injury he sustained in a diving accident nearly a decade ago.  (USCA5 801)  Similarly, Morgan is paralyzed and unable to walk, having been born with spina bifida, a disabling condition caused by the incomplete closure of the embryonic neural tube.  (USCA5 802)

In 2010, Plaintiffs underwent comprehensive wheelchair assessments to determine which custom components will meet their medical needs.  These were performed by qualified rehabilitation professionals (QRPs) and licensed physical or occupational therapists at reputable rehabilitation facilities specializing in the treatment of spinal cord injuries and neurological conditions. (USCA5 800-802) They were attended by highly qualified board-certified Physical Medicine and Rehabilitation (PMR) physicians.[4]

Bradley's assessment team recommended a wheelchair with several custom features, including standing, and explained:

> [it] will allow Bradley to independently participate in a standing program throughout the day, regardless of whether he is at home or in the community.  Being able to stand multiple times a day without assistance will prevent contractures and will preserve Bradley's ability to be in the upright position, reducing the likelihood of scoliosis. Because bone density is dependent on gravity, standing reduces the loss of bone density that results from the absence of gravity when one

---

[4] Bradley's physician was Dr. Charlotte Smith, then Medical Director for Rehabilitation Services, Seton Healthcare Network, in Austin, Texas.  Brian's physician was Dr. William Donovan, then Medical Director of the Texas Institute for Rehabilitation and Research (TIRR) and Chairman of the Department of PMR at the University of Texas.  Morgan's physician was Dr. Monica Verduzco-Guiterrez, Outpatient Medical Director at TIRR and assistant professor of PMR at UT's School of Medicine. (USCA5 175)

is forced to be in a seated position all day. Using the standing feature also provides numerous medical benefits to Bradley's vital organs. Standing reduces pressure on internal organs and allows for better digestive, bowel, and bladder management, including the frequency with which Bradley will experience constipation. Standing relieves the respiratory system of pressure and keeps the lungs clear. Standing also transfers pressure away from the scapulae, sacrum, coccyx, and ischial tuberosities, which reduces the likelihood of skin breakdown. Standing also allows the blood to circulate which prevents pressure sores. Standing will benefit Bradley's joints as well. Standing allows for passive range of motion for the hips, knees, and trunk. Standing prevents the hip flexors from tightening and prevents long-term hip deformity. Finally, the standing feature on the power wheelchair will increase Bradley's safety.

(USCA5 800, 270-274)

Brian was also evaluated by rehabilitation specialists who found he needs a custom wheelchair with power tilt/recline, standing, elevating leg rests, and a head array that allows him to independently control these features. (USCA5 801) Brian's long-time PMR physician agreed that a power wheelchair with standing feature will address the numerous secondary medical complications Brian faces, including: contractures, reduced gastro-intestinal and respiratory function, chronic constipation and possible bowel obstruction, recurrent bladder problems and urinary tract infections, loss of bone density and risk of fractures, swelling of extremities caused by poor circulation, excess muscle tone and spasticity and pressure sores. (USCA5 279-282)

Morgan was evaluated by a team of rehabilitation specialists, as well. They determined she requires a custom wheelchair with power tilt/recline, seat elevation,

standing, and elevating leg rests to address her medical needs, which include loss of bone density, chronic urinary tract infections, chronic constipation with risk of bowl impaction, ongoing pain and scoliosis.  (USCA5 802, 288-290, 682-684) Morgan's PMR physician agreed with the team's recommendations stating: "[Patient] was trialed with a wheelchair that is able to stand and she was able to do this well…This wheelchair would benefit her, due to again that it would be able to help her stand, which would help her posture, her pain, her bowels, her bones."[5] (USCA5 325)

Throughout this litigation, Plaintiffs' treating physicians were unwavering as to their patients' medical need for power wheelchairs with standing features and their professional opinion that power wheelchairs and separate standers will not meet Plaintiffs' needs.[6]  When these conclusions were challenged during their depositions, Dr. Smith affirmed that a separate stander will not meet Bradley's needs because it would require two people to transfer him in and out and will not allow him to be functionally mobile at the same time.  (USCA5 321)

---

[5] The Commissioner complains that Morgan's physician did not provide a separate letter of medical necessity, yet THHSC's prior authorization procedures do not require this.  THHSC specifies the wheelchair evaluation and request forms that must be completed and signed by appropriate medical professionals and these were provided for Morgan.

[6] In 2012, Dr. Smith and Dr. Donovan remained resolute as to their patient's medical need for power wheelchairs with standing features. (USCA5 323, 332) Morgan's primary care physician, Dr. Nuruddin also agreed with Dr. Verduzco-Guiterrez that a power wheelchair with standing feature is medically necessary for Morgan. (USCA5 325)

Dr. Donovan testified that multiple caregivers will be necessary to transfer Brian to a separate stander, even with the use of an electric patient lift. (USCA5 334) Similarly, Dr. Zakia Nurrudin testified that she would not prescribe a separate stander for Morgan because she would require three people to transfer her into this device. (USCA5 337)

It was undisputed in the district court that Plaintiffs do ***not*** have two or more caregivers to transfer them into a separate stander numerous times each day. Moreover, Plaintiffs are at high risk for serious transfer injuries, including bone fractures and skin shearing, each time they are moved. (USCA5 668, 673) This risk will increase dramatically if they must be transferred to and from separate standers throughout the day.

Plaintiffs' prior authorization requests were submitted to TMHP and were denied based upon THHSC's policy exclusion of power wheelchairs with standing features.[7] (USCA5 380-387, 801-802) TMHP did not determine whether these wheelchairs met THHSC's definition of DME, and are thus, covered through the home health benefit. Nor did TMHP determine whether they are medically necessary. (USCA5 833)

---

[7] The Commissioner continues his misleading references to the "retail" price of these wheelchairs. THHSC does not pay "retail" for the Medicaid services it approves. Instead, THHSC pays between 18% and 24% less than the retail price for custom wheelchairs. Additionally, THHSC receives more than half of its actual cost in federal matching funds.

Importantly, TMHP did **_not_** consider whether there were any "exceptional circumstances" under which Plaintiffs' recommended wheelchairs could be approved.  Until October 12, 2012, one month *after* the district court's decision, THHSC had no policy explaining how "exceptional circumstances" are considered during the prior authorization process.  While 1 TEX. ADMIN. CODE § 354(a)(4)(D) states that DME not listed in rule can be considered for payment in exceptional circumstances, THHSC did not allow this consideration for DME specifically excluded from coverage. As explained by TMHP's representative:

> Q. Now looking at that point in time prior to the denials that were issued for each of these plaintiffs, why was there no consideration of whether the equipment that they were requesting, the custom power wheelchair with standing feature, could be approved based upon exceptional circumstances.
> A. We have to apply the policy as is.
> Q. Okay.
> A. And the policy indicates that it's currently not a covered service.

(USCA5  829, 294-295)

THHSC's Senior DME Policy Analyst agreed, explaining that the consideration of exceptional circumstances "does not apply to categories of DME specifically called out as a non-covered service…"  (USCA5 828-829) And, as stated in TMHP's denial notices to Plaintiffs: "[a] power wheelchair with a built-in power standing feature is a type of mobile stander.  Texas Medicaid does not cover mobile standers."  (USCA5 380-387)

Finally, THHSC's unlawful policy exclusion of power wheelchairs with standing features, in conjunction with its fair hearing rules, result in hearings where the hearing officer must apply the policy and uphold TMHP's denial of the requested DME, without regard to medical need.  For medical equipment denied on other bases, however, THHSC's hearing officers can determine whether the item meets the state's DME definition and whether medical necessity is established. By operation of binding state policy, the only hearing THHSC affords Medicaid beneficiaries seeking excluded DME is one they cannot win.  (USCA5 829)

## STANDARD OF REVIEW

Appellate review of a district court's grant of summary judgment is *de novo. Apache Corp. v. W&T Offshore, Inc.,* 626 F.3d 789, 793 (5th Cir. 2010). Questions of constitutional law are also reviewed *de novo. Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 497 (5th Cir. 2004).  A district court's decision to deny summary judgment is reviewed for abuse of discretion only.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *see also* JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.41[3][d] (3d Ed. 2003).  There is no discretion to grant summary judgment if the standard set forth by Rule 56 is not met.  *Marcus v. St. Paul Fire & Marine Insurance Co.*, 651 F.2d 379, 382 (5th Cir. 1981).

## SUMMARY OF ARGUMENT

The Commissioner's numerous arguments on appeal have no support in existing case law. Contrary to his erroneous assertion, the district court correctly applied Fifth Circuit precedent allowing Plaintiffs to enforce the Medicaid Act's reasonable standards requirement, 42 U.S.C. § 1396a(a)(17), and amount, duration and scope rule, 42 C.F.R. § 440.230(b), through the Supremacy Clause. Fifth Circuit precedent is consistent with that of the Supreme Court and should not be overruled or "limited to its facts." Moreover, the district court was not required to abstain from deciding this case and refer it to the Centers for Medicare and Medicaid Services (CMS).

It is well-established that state Medicaid programs must comply with all federal requirements governing the program. The Commissioner's argument that the Medicaid Act "does not obligate the state to do anything" is wrong. The Act's requirements are clear and THHSC has been on notice for decades as its obligations under the law. The Commissioner knows that policy exclusions of DME, absent a medical rationale, conflict with the Medicaid Act's reasonable standards requirement, the amount duration and scope rule, and federal Medicaid policy. Fifth Circuit precedent strongly supports the district court's decision on this claim.

The district court correctly denied THHSC's summary judgment motion as more than 30 years of uniform interpretation of the Medicaid Act, including decisions by this Court, support the court's conclusion that THHSC's policy is unlawful. Precedent also supports the district court's conclusion that THHSC's policies and procedures deprive Plaintiffs of a meaningful hearing and violate their procedural due process rights. Moreover, Plaintiffs were not required to exhaust the state's administrative remedies prior to bringing this lawsuit. Having found THHSC's policy exclusion unlawful, there is nothing improper about the district court's decision to remand the question of Plaintiffs' medical need for this DME to the state.

## ARGUMENT

THHSC denied Bradley, Brian, and Morgan power wheelchairs with standing features - - <u>not</u> because they have no medical need for them - - but because these wheelchairs are expressly excluded from coverage by written policy. This policy is applied at prior authorization and at fair hearings, thus denying Medicaid beneficiaries like Plaintiffs a meaningful opportunity to obtain the DME prescribed by their treating medical professionals at both stages of review. Plaintiffs brought this lawsuit to challenge THHSC's policies and hearing procedures and the district court correctly ruled in their favor.

On appeal, THHSC attempts to re-litigate this case by offering new legal theories not raised below. But "[i]t is a general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120 (1976). *See also City of Dallas, Tx v. Hall*, 563 F.3d 712, 723-724 (5th Cir. 2009) (declining to consider arguments on appeal bearing "only a passing resemblance" to those raised below); *In re Goff*, 812 F.2d 931, 933 (5th Cir. 1987) (holding parties may not "raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory."); *Brown v. Ames,* 201 F.3d 654, 663 (5th Cir. 2000) ("To avoid being waived, an argument must be raised to such a degree that the trial court may rule on it.") Accordingly, the Commissioner cannot present new legal theories on appeal, but does so as set forth below.

The Commissioner proposes that this Court up-end decades of well-established law, including this Court's decisions and federal Medicaid policy, concerning the state's obligation to comply with federal Medicaid requirements when establishing DME coverage and to afford due process when Medicaid beneficiaries are denied DME. The district court correctly rejected these arguments below and this Court should not entertain new legal theories presented for the first time on appeal.

I.   **THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS HAVE THE RIGHT TO ENFORCE MEDICAID'S "REASONABLE STANDARDS" AND "AMOUNT, DURATION, AND SCOPE" REQUIREMENTS.**

The Commissioner calls the district court's decision "radical," but, in fact, it is perfectly consistent with controlling law from the Supreme Court, this Circuit, and federal courts around the country.  Rather, it is the Commissioner's argument that there is no cause of action to enforce any Medicaid requirements that departs from settled law.  He cites no cases directly supporting his position because there are none and the overwhelming weight of authority supports the district court's decision.

**A.   Fifth Circuit Precedent Recognizes There is an Implied Right of Action to Enforce the Supremacy Clause.**

The Supremacy Clause provides that federal law is the "supreme law of the land," notwithstanding any contrary state law.  U.S. CONST. art. VI, cl. 2.  It "secures federal rights by according them priority whenever they come into conflict with state law." *Golden Transit Corp. v. City of Los Angeles,* 493 U.S. 103 (1989).  *See also Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14 (1983) (Pursuant to the Supremacy Clause, federal courts have jurisdiction over claims that state regulation is preempted by a federal statute.) Federal regulations are no less preemptive than federal statutes. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 151, 152 (1982).  Accordingly, any state regulation that conflicts with

federal law is preempted and therefore invalid.[8]  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 204-05 (1983).

This Circuit has recognized the well-settled rule that federal courts have jurisdiction over preemption claims brought to enforce provisions of federal law, including those enacted pursuant to Congress' spending power, and there is an implied cause of action to bring such claims.  *Planned Parenthood of Houston & S.E. Tex. v. Sanchez,* 403 F.3d 324, 335 (5th Cir. 2005).  Further, it has recognized that individuals bringing a preemption claim need not show the underlying statute confers a right that is enforceable through 42 U.S.C. § 1983.  *Id.* As this Court explained, preemption claims are not based upon a claim of right to enforce the underlying statute, but rather to prevent state officials from violating federal law.  *Id.* at 335; *see also Id.* at 332 (noting that, in preemption challenges, the interests secured by the Supremacy Clause are at issue, not the rights under the underlying Medicaid statute); *see also New Orleans & Gulf Coast Ry. Co. v. Barrois,* 533 F.3d 321 (5th Cir. 2008) (recognizing a "clearly establishe[d]…federal right of action against 'state officials' to enjoin the enforcement of preempted state regulations.)

The *Planned Parenthood* opinion is in accord with numerous other decisions. *See, e.g., Lankford v. Sherman,* 431 F.3d at 513 (finding likelihood of

---

[8] Federal courts have also recognized that federal subregulatory guidance has preemptive effect. *See, e.g., Lankford v. Sherman,* 451 F.3d 496, 509-10 (8th Cir. 2006) (striking down state regulation inconsistent with federal subregulatory guidance); *Elizabeth Blackwell Health Ctr. for Women v. Knoll*, 61 F.3d 170, 182 (3d Cir. 1995) (federal Medicaid letter interpreting federal statute preempted state regulation restricting federal funding for abortion).

success on claim that state regulation restricting coverage of DME conflicted with and was preempted by Medicaid's reasonable standards statutory requirement, implementing regulations, and federal guidance); *Pharm. Research and Mfrs. of America v. Concannon,* 249 F.3d 66, 73 (1st Cir. 2001); *Pharm. Research & Mfrs. of America v. Thompson,* 362 F.3d 817, 819 n. 3 (D.C. Cir. 2004) (recognizing private right of action to enforce preemption claim as consistent with Supreme Court precedent); *Lewis v. Alexander,* 685 F.3d 325, 346 (3d Cir. 2012) (holding Supremacy Clause confers private right of action to enforce Medicaid trust provision and state laws that conflict with federal laws are unenforceable even if those federal laws do not confer individually enforceable rights); *see also Loyal Tire and Auto Ctr., Inc. v. Town of Woodbury,* 445 F.3d 136, 149 (2d Cir. 2006) (holding claim that a federal law preempts a state regulation is "distinct from a claim for enforcement of that federal law" under § 1983 and that "[a] claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity."); *Georgia Latino Alliance for Hum. Rights v. Gov. of Georgia,* 691 F.3d 1250, 1261 (11th Cir. 2012) (stating "[w]e have…resolved claims for injunctive relief where the asserted right of action sounded in the Supremacy Clause and have no reason to arrive at a contrary conclusion now.").

The Commissioner asserts that the district court's opinion "contradicts" three Supreme Court decisions - *Alexander v. Sandoval, Horne v. Flores,* and *Maine v. Thiboutot*. Appellant's Brief at 17. He did not raise this issue below and it is therefore waived. *See* p. 15, *supra.* In any case, he is wrong. None of these decisions address the question whether there is an implied private right of action to enforce the Supremacy Clause nor do they involve the Medicaid Act. *Alexander* holds there is no implied private right of action to enforce regulations implementing Title VI. 532 U.S. 275 (2001). It makes no mention of the Supremacy Clause or preemption. Nor does *Maine v. Thiboutot*; rather, it holds that §1983 authorizes private individuals to bring claims for purely statutory violations. 448 U.S. 1 (1980). *Horne v. Flores* addresses standing and the proper standard for analyzing motions seeking relief from consent judgments under Fed. R. Civ. P. 60(b)(5). Its holdings have nothing to do with enforcement of a statute, much less the Supremacy Clause or preemption. *Horne* contains brief dicta stating that the No Child Left Behind Act (NCLB) is not enforceable by private parties. 557 U.S. 433, 456 n. 6. However, the issue of the enforceability of NCLB, much less the Medicaid Act, was not before the Court and is not discussed anywhere else in the opinion. Thus, the holdings in these cases are unrelated to the district court's conclusion.

Moreover, the language the Commissioner cites from these opinions is taken out of context and is not applicable to Supremacy Clause claims. *Alexander* and *Horne* discuss when it is proper to imply a private right of action from a *statute*. *Alexander,* 532 U.S. at 286; *Horne,* 557 U.S. at 456 n. 6. Here, as with other preemption claims, the district court recognized an implied right of action to prevent imposition of state conditions that are inconsistent with federal law. With such claims, it is immaterial whether the underlying statute confers individually enforceable rights. *Planned Parenthood of Houston & S.E. Tex.*, 403 F.3d at 335.

In addition, the Commissioner misinterprets *Maine v. Thiboutot*. Far from holding, as he asserts, that § 1983 was the *only* means of enforcing the Social Security Act, the opinion simply makes the indisputable observation that there is no *express* private right of action in the SSA. 448 U.S. at 5-6. In any case, even if the dicta from *Horne* and *Thiboutot* directly supported THHSC, it would not undermine the district court's conclusion because courts are "bound by holdings, not language."[9] *Alexander,* 532 U.S. at 282.

---

[9] This Court should disregard the Commissioner's novel contention that the district court's interpretation of the Supremacy Clause would allow individuals to enforce treaties through private lawsuits. Appellant's Brief at 20. He cites no authority to support this argument, nor does he plausibly explain why such a regime would result from the district court's ruling. In any case, this issue was not presented to the district court and is waived. *See* p. 15, *supra.*

**B.**     **This Circuit's Decision in *Planned Parenthood of Houston & Southeast Tex. v. Sanchez* is Consistent with Supreme Court Precedent and Should Neither Be Overruled Nor Limited to its Facts.**

The Fifth Circuit's "rule of orderliness" provides that "absent an intervening change in the law, such as by a statutory amendment, or the supreme court or by our en banc court," a prior panel decision cannot be overturned by a later one. To work such a change, a Supreme Court decision "must 'unequivocally' overrule prior precedent." *Technical Automation Services Corp. v. Liberty Surplus Ins. Corp.* 673 F.3d 399, 405 (5th Cir. 2012). Contrary to the Commissioner's argument, *Horne v. Flores* does no such thing. As explained above, *Horne* addresses a completely different question than the one raised by this case and in *Planned Parenthood.*

Moreover, the Commissioner's interpretation of *Horne* is inconsistent with the Supreme Court's decision in *Douglas v. Independent Living Center*, 132 S. Ct. 1204 (2012). In *Douglas,* the Court granted cert to determine whether private individuals have a cause of action under the Supremacy Clause to enforce a provision of the Medicaid Act regarding provider reimbursement rates. The majority, however, did not decide the issue and instead remanded for consideration of the effect that federal approval of the challenged rate reduction had on the

question.[10]   132 S. Ct. at 1211.   If, as the Commissioner claims, the majority in

*Horne* had actually held there was no private cause of action to advance a

preemption claim, *Douglas* would have come out differently. In fact,  *Douglas*

does not change prevailing law regarding preemption claims and does not even

mention *Horne*.   Moreover, numerous other cases decided since *Horne* have

recognized that individuals may enforce provisions of the Medicaid Act through §

1983 or preemption.  *See, e.g., Lewis v. Alexander,* 685 F.3d at 346 (Supremacy

Clause); *Doe v. Kidd,* 419 F. App'x 411 (4th Cir. 2011) (§ 1983).

Thus, there is no reason for this Court to overrule *Planned Parenthood* nor

to limit the decision to its facts.   Appellant's Brief at 25.   Though the

Commissioner suggests that the holding could be limited to violations of Title X,

as he correctly notes, there is no logical reason to distinguish Title X from the

Medicaid Act or other statutes, nor does he cite any case law or make any

argument supporting this point.

He also urges the Court to limit *Planned Parenthood* to challenges to

codified state statutes and regulations, and claims that Plaintiffs are challenging

only a practice.  *Id.* First, this is incorrect – Plaintiffs are challenging THHSC's

written policy. *See* discussion at pp. 30-40, *infra.*  In any case, there is no legal

---

[10] Notably, the district court rejected the Commissioner's claim that the federal government approved the policy challenged in this case. (USCA5 811)  The Commissioner does not appeal this finding.

support for this distinction.  In *Lividas v. Bradshaw*, the Supreme Court allowed a

challenge to a state administrative policy that was embodied only in a standard

form letter to the plaintiff explaining why no action would be taken on his labor

violation claim. 512 U.S. 107, 112-13 (1994).  *See also, e.g., League of Women*

*Voters v. Blackwell,* 340 F. Supp. 2d 823, 827-28 (N.D. Ohio 2004) (allowing

Supremacy Clause challenge to directives from the Secretary of State); *Equal*

*Access Education v. Merten,* 305 F. Supp. 2d 585 (E.D. Va. 2004) (holding that

state policy governing immigration is subject to the same preemption analysis as a

statute).

## II.    STATE OFFICIALS MUST FOLLOW THE REQUIREMENTS OF THE FEDERAL MEDICAID ACT, IMPLEMENTING REGULATIONS, AND WRITTEN GUIDANCE FROM THE FEDERAL MEDICAID AGENCY.

The Commissioner claims, for the first time, that it is not possible for state

officials to "violate" the Medicaid Act because it merely establishes criteria for

federal reimbursement and "does not obligate the States to do *anything… .*"

Appellant's Brief at 26, 28 (emphasis original).  This is simply wrong.  It is well-

settled that when a state operates a Medicaid program, it must obey all federal

statutory and regulatory requirements that govern such programs.   "Although

participation in the Medicaid program is entirely optional, once a State elects to

participate, it must comply with the requirements of [the Act]."  *Harris v. McRae,*

448 U.S. 297, 301 (1980).  *See also Frew ex rel. Frew v. Hawkins,* 540 U.S. 431,

433 (2004) ("[O]nce a State elects to join the program, it must administer a state plan that meets federal requirements."); *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 502 (1990) (holding that a state that has accepted federal Medicaid funds "is bound by the strings that accompany them"); *Hope Med. Group for Women v. Edwards,* 63 F.3d 418, 421 (5th Cir. 1995) ("Although a state's participation in the Medicaid program is voluntary, participating states must abide by the requirements imposed by [the Medicaid Act] and regulations… ."); *Mitchell v. Johnston*, 701 F.2d 337, 340 (1983) ("Texas, like most states, has taken a bite out of the carrot of cooperative federalism and is, accordingly, subject to the federal stick-the minimum mandatory requirements set forth in the Medicaid legislation.") Moreover, the Supreme Court recently held that a state acting contrary to Medicaid's requirements "violates federal law." *Ark. Dep't of Health & Human Servs. v. Ahlborn* 547 U.S. 268, 286 (2006) (emphasis added)

The Commissioner bases his argument on a provision allowing the HHS Secretary to terminate or limit payments to states that fail to comply with Medicaid requirements. Appellant's Brief at 28 (citing 42 U.S.C. § 1396c). Contrary to the Commissioner's claims, however, withholding federal funds has never been the exclusive means of enforcing obligations imposed by the Medicaid Act. There is nothing in this provision, or elsewhere in the statute, suggesting this is the sole enforcement mechanism. Moreover, the Commissioner's novel argument is

24

contrary to decades of cases in which private individuals have enforced Medicaid requirements.  *See, e.g., Ark. Dep't of Health & Human Servs.*, 547 U.S. at 286; *Wilder,* 492 U.S. at 524, and cases cited *supra* at pp. 23-24. *See generally Barnes v. Gorman,* 536 U.S. 181, 187 (2002) (noting that a "funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant litigation, but also to those remedies traditionally available in suits for breach of contract," including "injunction.")

Contrary to the Commissioner's arguments, nothing in the Supreme Court's decision in *National Federation of Independent Businesses (N.F.I.B.) v. Sebelius* alters this well-settled rule.  In *N.F.I.B.*, the Court considered the constitutionality of a provision of the Affordable Care Act (ACA) requiring states to expand Medicaid eligibility to most individuals with incomes below 133% of the federal poverty level beginning in 2014.  132 S. Ct. 2566 (2012) (discussing 42 U.S.C. § 1396a(a)(10)(A)(i)(VIII). Based on a plurality opinion by Justices Roberts, Kagan and Breyer, *N.F.I.B.* prohibits the HHS Secretary from withholding all federal Medicaid funds from states that did not expand. 123 S. Ct. at 2607.

In contrast to the Medicaid program in effect since 1965, which covers low-income children, caretaker relatives, the elderly, and people with disabilities, the expansion would include childless adults below 133%.  Justice Roberts described this as "a shift in kind, not merely degree" and found that it created a new program

that states could not have anticipated when they agreed to participate in Medicaid. Accordingly, it exceeded Congress' powers under the Spending Clause to authorize HHS to withhold funds from the existing Medicaid program when states did not join the new program. *Id.* at 2606.

The Commissioner misstates *N.F.I.B.*, claiming it holds that "States may choose to violate conditions in the [ACA] and accept a reduction in federal reimbursement." Appellant's Brief at 29. *N.F.I.B.* is much narrower, holding only that "Congress is not free to... penalize States that choose not to participate in that new [Expansion] program by taking away their existing Medicaid funding." Significantly, Justice Roberts notes that "[n]othing in our opinion precludes Congress from offering funds under the [ACA]…and *requiring that States accepting such funds comply with conditions on their use*." *N.F.I.B.,* 132 S. Ct. at 2607 (emphasis added). Moreover, nothing in *N.F.I.B.* suggests that decades of precedent treating Medicaid requirements as binding federal law are wrong.[11] *See Id.* at 2606 (noting that none of the previous significant changes to the Medicaid Act "come close to working the transformation the expansion accomplishes"). No court has interpreted *N.F.I.B.* to work such a major change in the law.

---

[11] The Commissioner also argues that *N.F.I.B.* "permit[s] the Secretary to continue funding a non-compliant State and withhold funding only from 'categories' or 'parts' of the state program that fail to comply with the federal reimbursement criteria" and such failure to comply does not violate federal law. Appellant's Brief at 30. This is incorrect. The Secretary's ability to withhold funds from parts of a state Medicaid plan is nothing new and has been authorized since the inception of the Medicaid program. Pub. L. No. 89-97, Tit. I, § 121a, 79 Stat. 351 (1965).

The Commissioner contrasts the Medicaid Act with statutes such as Title VI of the Civil Rights Act and the Religious Land Use and Institutionalized Persons Act (RLUIPA), which he claims require return of federal aid before deviating from conditions imposed by the law or "become federal lawbreakers." Appellant's Brief at 26. He is wrong. RLUIPA contains no provision requiring the return of federal funds before violating the law's provisions. 42 U.S.C. § 2000cc. Nor does Title VI. In fact, like Medicaid, the federal agency may compel compliance with Title VI by termination of funds. 42 U.S.C. § 2000d-1. Thus, a Title VI violator may also wait for the federal government to "turn off the spigot" of federal funding, but that makes him no less a lawbreaker. *See, e.g., Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 284 (1978) (Title VI is intended to "halt federal funding of entities that *violate* a prohibition of racial discrimination similar to that of the Constitution.") (emphasis added).

The Commissioner claims that the Medicaid Act is more like the statute imposing a 21-year-old-drinking age, 23 U.S.C. § 158(a)(1)(A). Appellant's Brief at 27. But, the withholding of federal funds under this section appears automatic. *Id.*, § 158(a)(1)(A) ("the Secretary shall withhold…"). In contrast, withholding of funds based on lack of compliance with Medicaid and Title VI requires specific findings of noncompliance and provision of notice and opportunity for a hearing. *See* 42 U.S.C. § 1396c.

27

**III.    THERE IS NO CONFLICT WITH *PENNHURST'S* "CLEAR STATEMENT RULE."**

The Commissioner argues that the Medicaid Act, regulations, and interpretive guidance failed to put him on notice that he was required to cover the equipment Plaintiffs need and that this Court should reject Plaintiffs' claim. Appellant's Brief at 31-32.   This argument was not raised below and is waived. *See* p. 15, *supra.* Moreover, contrary to his contention, *Pennhurst State Sch. & Hosp. v. Halderman* does not compel a different result than that reached by the lower court. 451 U.S. 1 (1981).

It is axiomatic that "Congress has broad power to set the terms on which it disburses federal money to the states" but that states must "voluntarily and knowingly" accept conditions attached to federal funds to be bound by them. *Arlington Ctr. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17).   "Knowing acceptance" is when a state is able to ascertain what the federal government expects of it.  *Pennhurst,* 451 U.S. at 17. Although *Pennhurst* addresses whether statutory language provides adequate notice, regulations and federal guidance may also place a state on notice of federal conditions.  *See Bennett v. Ky.,* 470 U.S. 656, 670 (1985) (holding that states agree to be bound by conditions set forth in statute, regulations, and "other guidelines" set forth by the federal government when accepting funds); *Mass. v. Sebelius,* 701 F. Supp. 2d 182, 196 (D. Mass. 2010) (holding that State Medicaid Director letters

and other subregulatory guidance adequately notified state Medicaid agency of limitations imposed on expenditure of federal Medicaid funds).

The Commissioner asserts that "nothing in the Medicaid Act, the…regulations, or [federal guidance] forbids a state to exclude sit- to-stand power wheelchairs from coverage, or requires a State to make this $50,000 convenience item available to anyone who can show that it could provide some conceivable medical benefit."[12]   Appellant's Brief at 31.   But, this is not what Plaintiffs seek.   As explained at pp. 6-10, *supra,* the power wheelchairs with standing features recommended for Plaintiffs are not convenience items and their medical need for these wheelchairs is well documented.   Moreover, the Commissioner is wrong - Medicaid's reasonable standards provision, amount, duration, and scope regulation, and the *DeSario* letter clearly notify the Commissioner that THHSC is required to cover medically necessary DME consistent with federal guidance.[13]

---

[12] The Commissioner also claims that, because the Medicaid Act requires only provision of medical assistance (payment for services), it cannot put a State on notice that is must provide "mobile standers."   Appellant's Brief at 33 (citing 42 U.S.C. § 1396d(a)).   Not only does he misunderstand Plaintiffs' claim, he cites an outdated version of the Medicaid statute.   First, Plaintiffs are, in fact, requesting coverage of medically necessary DME. (USCA5 270-274, 279-282, 288-290)   Second, the Medicaid Act was amended in 2010 to clarify that "medical assistance" is "payment of part or all of the cost of…care and services or the care and services themselves, or both…" 42 U.S.C. § 1396d(a) (2012) (emphasis added).

[13] As discussed below, a number of courts have interpreted this combination of statutory provision, regulation, and federal guidance to prohibit absolute exclusions of items of DME, which belies the Commissioner's claim that the requirement is too vague to put states on notice of what is required. *See* pp. 30-39 *infra*.

IV.  **THE DISTRICT COURT CORRECTLY HELD THHSC'S EXPRESS EXCLUSION OF POWER WHEELCHAIRS WITH STANDING FEATURES IS PREEMPTED BY THE MEDICAID ACT.**

The district court carefully reviewed THHSC's express exclusion of power wheelchairs with standing features and correctly held it was unlawful on its face, not just as applied to Plaintiffs, because it conflicts with the state's DME coverage obligations under the Medicaid Act's reasonable standards requirement, 42 U.S.C. § 1396a(a)(17), and implementing amount, duration and scope regulation. 42 C.F.R. § 440.230(b).  (USCA5 813-23) In reaching this conclusion, the court noted "THHSC has failed to cite a single case supporting its position" on the merits. (USCA5  821)  The district court's decision is consistent with prior decisions of this Court and with long-standing interpretations of these provisions by other courts, and with federal Medicaid policy.[14]

**A.  THHSC Policy Expressly Excluding Power Wheelchairs with Standing Features Absent a Medical Rationale is Unlawful.**

The district court's decision that THHSC's policy exclusion of power wheelchairs with standing features is unlawful is supported by this Court's prior decisions and those of numerous other federal courts.  In *Rush v. Parham,* 625 F.2d 1150, 1157 n.12 (5th Cir. 1980), this Court explained that a state may not exclude a specific treatment simply because it is disfavored.  More than a decade later, this

---

[14] *See Amicus Brief for the Association of Tech Act Projects, filed in Fred C. v. Texas Health & Hum. Serv. Comm'n,* (5th Cir.), 1998 WL 34180236 at * 1-8 (collecting cases).

Court held that a state may not exclude a specific medical procedure from coverage "without regard to whether the procedure[ ] might be medically necessary." *Hope Med. Grp. for Women v. Edwards*. 63 F.3d 418, 427 (5th Cir. 1995). To do so violates the reasonable standards requirement of the Medicaid Act. *Id.* at 428. In these decisions, this Court made clear that state Medicaid agencies lack discretion to exclude a specific medical treatment from coverage, absent a valid medical rationale for the exclusion.

In *Fred C. v. Texas Health & Hum. Serv. Comm'n,* the district court followed *Rush* and *Hope Med. Grp.* to strike down THHSC's express exclusion of augmentative communication devices (ACDs) for adult beneficiaries. Because ACDs met the state's definition of DME; ACDs were covered as DME for children; and adults were equally able to use and benefit from ACDs, the court concluded that ACDs must be covered for adults when medically necessary. In addition, it held that beneficiary age is an unlawful basis for non-coverage because age is "wholly unrelated to the medical decision at hand," and "cannot meet the fundamental concept of reasonableness." 988 F.Supp.1032, 1036 (W.D. Tex. 1997), *affirmed without opin.*, 167 F.3d 537 (5th Cir. 1998).

Since *Fred C.,* every court considering this issue has struck down state Medicaid agencies' exclusions of medical equipment that met states' Medicaid

DME definition and served a medical need.[15]   For example, in *Lankford v. Sherman,* the Eighth Circuit examined the exclusion of certain DME from Medicaid coverage and concluded that "a state's failure to provide Medicaid coverage for non-experimental, medically necessary services within a covered Medicaid category is both *per se* unreasonable and inconsistent with the stated goals of Medicaid." 451 F.3d at 511.

To uphold the district court's decision requires only the straightforward application of *Hope Med. Grp., Rush, and Fred C.*  There is no real dispute that power wheelchairs with standing features meet THHSC's DME definition as it covers these devices as DME for beneficiaries younger than age 21 and its DME definitions are the same for beneficiaries of all ages.  Nor is there any evidence that power wheelchairs with standing features serve no medical purpose for adults. (USCA5 800-03, 215-219). The Commissioner's assertions that power wheelchairs with standing features may lawfully be excluded because they are "comfort luxuries" and "convenience items," (USCA5 818) and because of "safety

---

[15] *Hiltibran v. Levy,* No. 10-4185-CV-C-NKL, 2010 WL 6825306 (W.D. Mo. Dec. 27, 2010)(awarding preliminary injunction); 793 F. Supp. 2d 1108, 1114 (W.D. Mo. 2011)(awarding summary judgment because "individuals over age 20 were not allowed to establish medical necessity for incontinence briefs, nor were they allowed to use the State's prior authorization process to verify a medical need for adult diapers."); *Hunter v. Chiles,* 944 F. Supp. 914 (S.D. Fla. 1996); *Conley v. Dept. of Health,* No. 20100496-CA, 2012 WL 4450154 (Utah App. Sept. 27, 2012); *Jasset v. R.I. Dept. of Hum. Serv.,* No. C.A. PC 05-3815, 2006 WL 2169891 (R.I. Super. July 31, 2006); *Blue v. Bonta,* 121 Cal. Rptr.2d 483 (Cal. App. 2002); *Brisson v. Dep't of Pub. Welf.,* 702 A.2d 405 (Vt. 1997), *see also* cases cited at pp. 38-39, *infra.*  *Accord Alvarez v. Betlach,* CV 09-558 TUC AWT Slip Op. (D.Ariz. May 21, 2012) (medical supplies).

concerns" are not borne out by the evidence.[16]   The Commissioner has not – and cannot – explain why power wheelchairs with standing features are excluded as unsafe luxury or convenience items for adults but are covered as medically necessary DME for children.   THHSC's own practices belie the Commissioner's stated rationale for its unlawful policy exclusion.

The Commissioner also claims that THHSC's coverage of a separate stander for adults complies with the reasonable standards provision. But there is no evidence a separate stander *will* suffice for every adult Medicaid beneficiary with a physical disability who has a medical need to stand, regardless of the nature or severity of his or her disability, the range of functional abilities he or she possesses, or the daily circumstances that take him or her away from home (and the separate stander) each day. (USCA5 214-219)   In this case in particular, THHSC ignores the undeniable fact that Plaintiffs cannot self-transfer to separate standers and they do not have two or more caregivers to transfer them in and out of this item of DME numerous times each day.

Given these undisputed facts, the district court correctly held THHSC's power wheelchair with standing features policy conflicts with and is preempted by

---

[16] The Commissioner's reliance on a report reviewing *Medicare* coverage of power wheelchairs, Appellant's Brief at 10, has no relevance to the *Medicaid* exclusion at issue here.  Notably, the report does not address power wheelchairs with standing features.  Moreover, *Medicare* does not require prior authorization for power wheelchairs, in contrast to Texas Medicaid, which reviews every request to determine whether medical need has been established by Medicaid beneficiaries' health care providers.  Thus, this report provides no support for THHSC's exclusion of power wheelchairs with standing features.

the Medicaid Act's reasonable standards requirement and implementing regulation. 42 U.S.C. § 1396a(a)(17); 42 C.F.R § 440.230(b). Consistent with *Rush, Hope Med. Grp., and Fred C.,* THHSC's policy is unlawful because it "categorically limits" adult coverage for power wheelchairs with standing features "without regard to the medical necessity" for these wheelchairs, and "is not grounded on the health or medical needs of Title XIX patients." 63 F.3d at 427.

The importance of medical need was re-affirmed in *Fred C.'s* four-part standard governing THHSC's obligation to provide requested DME. An item of equipment must be approved when:

(1) The person requesting the equipment is a Medicaid beneficiary;

(2) The requested item meets THHSC's DME definition;

(3) The Medicaid beneficiary satisfies home health eligibility criteria; and

(4) The item of DME is medically necessary.

117 F.3d 1416 (5th Cir. 1997) (later history omitted). This standard requires THHSC to make individualized determinations of coverage and medical necessity. Yet, Medicaid beneficiaries like Plaintiffs who are over 21 are deprived of the opportunity to establish this standard is met when they request power wheelchairs with standing features because THHSC categorically excludes these wheelchairs from coverage notwithstanding that they are DME and regardless of the individual's medical need.

In a recent case examining Missouri Medicaid's categorical exclusion of incontinence briefs for adult beneficiaries, the court explained that, "unreasonable standards that are inconsistent with the purposes of the Medicaid Act include those that 'reflect [ ] inadequate solicitude for the applicant's diagnosed condition, the treatment prescribed by the applicant's physicians, and the accumulated knowledge of the medical community.'" *Hiltibran v. Levy,* 2010 WL 6825306 at *3, (W.D. Mo. 2012) *quoting Weaver v. Reagen,* 886 F.2d 194, 200 (8th Cir. 1989). This is precisely the type of exclusionary standard applied by the Commissioner in the present case. In clear disregard of the requirements of the Medicaid Act, THHSC has established a policy that conflicts with the reasonable standards provision of the Medicaid Act and the amount duration and scope rule. Thus, the district court correctly held that THHSC's policy is preempted by federal law.

### B.     THHSC's Power Wheelchair with Standing Feature Policy Conflicts with Federal Medicaid Policy.

The Commissioner claims that THHSC's categorical exclusion of power wheelchairs with standing features is consistent with federal guidance on DME coverage. Appellant's Brief at 34-6.   The district court correctly held to the contrary.  (USCA5 814-816)

Federal Medicaid policy regarding the scope of DME coverage is explained in a 1998 letter from HHS issued in response to *DeSario v. Thomas*, 139 F.3d 80 (2d Cir. 1998), *reversing* 963 F. Supp. 120 (D. Conn. 1997) ("*DeSario Letter*").  In

*DeSario,* plaintiffs challenged a Connecticut Medicaid regulation containing both an exclusive list of covered DME and a list of expressly excluded DME items. 963 F. Supp. at 124.   Medicaid beneficiaries were unable to obtain excluded DME items or any DME not mentioned on the coverage list either through prior authorization or the administrative hearing process. *Id.* at 125-26; 130. The district court held this regulation was an unlawful, irrebuttable presumption against coverage.   *Id.* at 134.   The agency appealed.   It also revised the coverage lists and stated a beneficiary could obtain a non-listed or expressly excluded item if able to demonstrate in prior authorization or administrative appeal that coverage of the item was justified based on the needs "of the Medicaid population as a whole."   *Id.* at 139, 142-43.

The Second Circuit upheld both the use of an exclusive list of covered items and "the Medicaid population as a whole" standard, believing this outcome was consistent with the HHS Secretary's interpretation of the reasonable standards requirement and amount, duration and scope rule. 139 F.3d at 89-96.  The federal agency then issued the *DeSario Letter* to clarify that the Second Circuit's interpretation was incorrect.   Accordingly, the United States Supreme Court vacated the Second Circuit's decision to reconsider in light of the *DeSario Letter.* 525 U.S. 1098 (1999).

Three principles in the *DeSario Letter* are relevant here. First, Medicaid agencies may "develop a list of pre-approved items of [DME] as an administrative convenience because such lists eliminate the need to administer an extensive application process for each ME request submitted." (USCA5 302 at ¶ 3). However, there must be a "reasonable and meaningful procedure" and "a meaningful opportunity" for Medicaid beneficiaries to seek "modifications of or exceptions to a State's pre-approved list." *Id.* Thus, *exclusive* coverage lists and lists of expressly excluded DME items are prohibited.

Second, to be "reasonable and meaningful," the procedure must allow for individualized decisions regarding coverage under the state's DME and medical need definitions:

> [A] state will be in compliance with federal Medicaid requirements *only if, with respect to an individual applicant's request for an item of ME* [medical equipment], the following conditions are met…
>
> [there is a] process [that] is timely and employs reasonable and specific criteria by which *an individual item of ME will be judged for coverage under the State's home health services benefit.*
>
> [And]
>
> [the state's fair hearing process must be authorized] to determine whether an adverse decision is contrary to [the reasonable standards requirement and amount, duration and scope regulation].

*Id.* at ¶ 4 (emphasis supplied). Beneficiaries *request* items of DME by seeking prior authorization, and these will *be judged for coverage under the State's home health services benefit* in the prior authorization and Medicaid fair hearing process.

Third, the opportunity to seek non-listed DME must be available to Medicaid beneficiaries of all ages. (USCA5 302 ¶ 3).[17]

THHSC's policy exclusion of power wheelchairs with standing features is inconsistent with all three principles of the *DeSario Letter*. The district court stated the policy establishes a binding conclusion that for every adult Medicaid beneficiary, regardless of individual circumstance, there is "a less expensive stationary stander that provides identical medical benefits." (USCA5 816). The policy also offers adult Medicaid beneficiaries no opportunity for an individualized determination of coverage or medical need in the prior authorization or appeal process.[18] Finally, THHSC does not apply this exclusion to Medicaid beneficiaries younger than age 21.[19] For these reasons, the district court correctly concluded THHSC's policy conflicts with federal law. (USCA5 816)

---

[17] The *DeSario Letter* also specifically prohibits use of the "Medicaid population as a whole" test, which it describes as a standard that cannot be met. (USCA5 302 at ¶ 3).

[18] The Commissioner does not – and cannot – argue that his "exceptional circumstances" regulation satisfies the *DeSario Letter*'s requirement for an exceptions process because, when the decision below was issued, there was no such process available for beneficiaries to request excluded DME. See discussion at pp. 50-52, *infra.*

[19] The Commissioner falsely claims Plaintiffs' position is that if the exclusion were applied to children as well as adults it would satisfy the *DeSario Letter*. The exclusion is prohibited for any beneficiaries denied the opportunity to establish their requested wheelchairs are covered or medically necessary.

The Commissioner's claim about the *DeSario Letter* also conflicts with its uniform interpretation.  After remand from the Supreme Court, the Connecticut Medicaid agency settled *DeSario* by adopting a new procedure allowing beneficiaries to use the prior authorization and administrative appeal process to establish that an item not on the agency's pre-approved list nonetheless fits the DME definition and is medically necessary.  *See* Conn. Admin. Reg. § 17b-262-716 (a)(4).  Subsequently, all reviewing courts have interpreted the *DeSario Letter* to prohibit express DME exclusions in state regulation or policy.  *Lankford v. Sherman*, 451 F.3d at 511-13; *T.L. v. Colo. Dept. of HealthCare Policy & Fin.*, 42 P.3d 63, 66 (Colo. App. 2001); *Bell v. Agency for Health Care Admin.*, 768 So.2d 1203, 1205 (Fla. App. 1 Dist. 2000); *Will T. v. Taylor*, 465 F. Supp. 2d 1267, 1279 (N.D. Ga. 2000); *Esteban v. Cook*, 77 F. Supp. 2d 1256, 1260 (S.D.Fla. 1999).

## C.     The Commissioner's Power Wheelchair with Standing Feature Policy Violates Federal Law.

The Commissioner's final point is that the district court improperly interpreted and enforced *state* law, specifically THHSC's DME definition, against a state defendant.  Appellant's Brief at 37-38.  This assertion is baseless.  The district court interpreted and enforced the Medicaid Act's reasonable standards requirement and amount duration and scope regulation, both of which are *federal* law provisions.  That these provisions incorporate state-law principles does not make them unenforceable. As described above, the *DeSario Letter* explains that

beneficiaries must be given an opportunity to show the DME they need fits within the state's definition of DME. *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 290 (2d Cir. 2003) (stating that "reference to state statute, regulation, or policy served merely to aid resolution of the ultimate question of whether the state defendant is complying with its responsibilities under federal law.").

## V.     THE DISTRICT COURT CORRECTLY DENIED THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT.

The Commissioner argues the district court erred in denying his motion for summary judgment because "plaintiffs' evidence of medical necessity was insufficient to survive a motion for summary judgment." Appellant's Brief at 39 This is incorrect.   A denial of summary judgment is reviewed for abuse of discretion only and the court was well within its discretion to deny the Commissioner's motion. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. at 255.

Plaintiffs sought a ruling that THHSC's policy is preempted by federal Medicaid law, an injunction prohibiting THHSC from enforcing the policy, and an order directing THHSC to provide them the requested wheelchairs.  The district court granted part of this relief by correctly holding that THHSC's policy exclusion is unlawful and enjoining THHSC from enforcing this policy.  The court did not order THHSC to provide the prescribed wheelchairs to Plaintiffs, and instead, gave THHSC the opportunity to lawfully resolve Plaintiffs' eligibility for this DME.  Contrary to the Commissioner's claim, the district court did not have to

determine Plaintiffs' medical needs to hold THHSC's policy exclusion unlawful. Indeed, the Commissioner acknowledged as much when he informed the court in his motion that he would "focus[ ] on the legal—rather than factual—issues in this case." (USCA5 391)

The Commissioner provides no legal support for his argument and simply resorts to repeating the same misrepresentations of Plaintiffs' medical evidence offered in the district court. Contrary to his assertions, the district court correctly found that Plaintiffs "presented substantial evidence supporting their need for a mobile stander" and that THHSC offered no credible evidence to the contrary. (USCA5 833, 831 n.7) Plaintiffs' evidence included their earlier prior authorization documentation (wheelchair assessments performed by rehabilitation specialists and signed medical necessity certifications by their physicians), supplemented by numerous affidavits from involved providers and caregivers, and the deposition testimony of their physicians.[20]

Plaintiffs' evidence established they are wheelchair users with severe physical disabilities who experience multiple secondary medical complications as a result of prolonged sitting every day. *See* pp. 6-9, *supra*. They cannot self-transfer

---

[20] The Commissioner complains the district court did not "attempt to define what medically necessary means", however, the court was not required to do so to hold the policy illegal. Moreover, THHSC defines this term in policy: DME is medically necessary when it is "required to correct or ameliorate a client's disability, condition, or illness," 2011 TMPPM DME Handbook, §2.2.2 (USCA5 308)

to separate standers and are at high risk for transfer injuries. (USCA5 277, 286-287, 303-304)  They do not have access to sufficient numbers of caregivers to safely transfer them in and out of a separate stander throughout the day.  Given these facts, Plaintiffs' medical providers determined that two items of DME – custom power wheelchairs and separate standers – will not effectively address Plaintiffs' medical needs.  Instead, they prescribed power wheelchairs with standing features, which will meet Plaintiffs' mobility needs and allow them to independently stand at home or in the community to address their numerous secondary medical complications.  This evidence is more than sufficient to defeat THHSC's motion for summary judgment.

The Commissioner's appeal misrepresents Plaintiffs' evidence.  He claims that Plaintiffs just "found a doctor willing to prescribe a mobile stander."  In fact, they were properly evaluated by QRPs and licensed therapists and attended by well-qualified rehabilitation physicians.  *See* p.7, *supra*.

Moreover, Bradley's physician did not state that a separate stander was sufficient to address his medical needs.  Dr. Smith explained that Bradley's then-current program that involved traveling 85 miles to a rehabilitation facility twice a week, at which multiple staff members working together safely transferred him to a separate stander demonstrated that standing was not contraindicated for him.  However, she further stated that one of the "big goals" of Bradley's treatment is to

provide consistent access to standing throughout the day with a mobile stander. (USCA5 670-671)

The Commissioner's claim that Brian "failed a standing-treatment program" is false and unsupported by any evidence. Brian's 2009 medical records demonstrated the opposite was true. In his deposition, Dr. Donovan reviewed these records and explained that Brian's tolerance for standing was good. (USCA5 679-680)

The Commissioner's complaint about Morgan's prior authorization request is also contrary to the facts. After Morgan successfully completed a trial standing program in therapy, her PMR physician ordered a wheelchair evaluation. This evaluation recommended a power wheelchair with standing feature, which Morgan's PMR physician agreed would address her medical needs. While Morgan's primary care physician, Dr. Nuruddin, was not aware of all of the components recommended by TIRR's specialists when she signed the DME form, she testified under oath that she reviewed the wheelchair evaluation prior to her deposition and agreed that a power wheelchair with standing feature will address the medical complications Morgan faces due to prolonged sitting in her wheelchair. (USCA5 682-684) Ultimately, two physicians, in addition to other rehabilitation specialists, supported Morgan's medical need for the recommended wheelchair.

Further, the Commissioner's claim that "if the mere risk of 'transfer injury' is enough to establish medical necessity for a mobile stander *every* wheelchair user on Medicaid will be entitled to a sit-to-stand wheelchair" is untrue and contradicted by THHSC's own experience.[21]     THHSC has covered power wheelchairs with standing features for children for some years, yet offered no evidence that this coverage has entitled every child wheelchair user to this DME. Importantly, not every wheelchair user must stand numerous times each day with the use of this particular wheelchair. Some can stand on their own or with minimal assistance. Others require the use of DME to support them in standing. Within this group, some individuals can either self-transfer or require limited transfer support, making a separate stander a possible option for them. (USCA5 330) Others who cannot access separate standers may require power wheelchairs with standing features. And finally, there are those who cannot stand at all.

In sum, Plaintiffs' unrefuted evidence of medical necessity for power wheelchairs with standing features is comparable to others who have obtained this DME. In *Sorrentino v. Novello*, 295 A.D.2d 945 (N.Y 2002) the court found the combination of medical benefit to petitioner, the absence of sufficient caregivers for transferring to a separate stander throughout the day, and the risk of transfer

---

[21] The  fallacy of the Commissioner's argument is demonstrated by THHSC's coverage of wheelchair components like seat elevation and tilt/recline. Coverage of these features has not entitled every wheelchair user to obtain them.  Instead, they are approved only for individuals who establish a medical need for them.

injuries entitled the Medicaid beneficiary to a power wheelchair with standing feature. *Accord Johnson v. Minn. Dep't of Human Services,* 565 N.W. 2d 453 (Minn. App. 1997).

Finally, nothing about the court's remand to THHSC to review Plaintiffs' medical need for power wheelchairs with standing features warrants any action by this Court, certainly not reversal of the denial of the Commissioner's motion for summary judgment. *See* pp. 57-58, *infra.*

## VI. THE DISTRICT COURT WAS NOT REQUIRED TO ABSTAIN AND REFER THIS CASE TO CMS.

The Commissioner argues, for the first time, that the district court should have abstained from hearing this case. He is wrong, it was proper for the district court to resolve this case. The doctrine of primary jurisdiction "is a flexible doctrine to be applied at the discretion of the district court." *El Paso Natural Gas Co. v. Sun Oil Co.,* 708 F.2d 1011, 1020 (5th Cir. 1983). Accordingly, the Commissioner cannot meet the high standard of showing that the district court abused its discretion by hearing this case, particularly when he never asked the court to abstain. *See Wagner & Brown v. ANR Pipeline Co.,* 837 F.2d 199, 201 (5th Cir. 1988) (holding that lower court did not abuse discretion when it abstained from hearing a case).

Nor do any of the authorities the Commissioner cites suggest that the district court abused its discretion. *Douglas* stands only for the unremarkable proposition

that a determination by CMS as to whether a state plan complies with the Medicaid Act is entitled to deference. 132 S. Ct. at 1210.  Moreover, in *Douglas,* CMS had determined that the state law being challenged complied with the Medicaid Act. Here, CMS has not approved THHSC's policy, as the Commissioner admits. Appellant's Brief at 42. (USCA5 811)

Similarly, the non-binding lower court decisions from other circuits cited by the Commissioner are factually distinguishable.  In *Dartmouth-Hitchcock Clinic v. Toumpas,* the HHS Secretary was actively reviewing the rate reductions being challenged by the plaintiffs.  No. 11-cv-358-SM, 2012 WL 4482857, *5 (D.N.H. Sept. 27, 2012)  In *Miller ex rel. Morrish v. Olszewski,* the Secretary was in the process of considering a state plan amendment that contained the challenged policy. No. 09-13683, 2009 WL 5201792, *8 (E.D. Mich. Dec. 21, 2009).  And, in *Affiliates, Inc. v. Armstrong*, the Secretary was considering an amendment to a home and community-based waiver program, which the plaintiffs claimed was necessary for implementing changes to the program.  Nos. 1:09-cv-00149-BLW, 1:11-cv-00307-BLW, 2011 WL 3421407, *7 (D. Idaho Aug. 4, 2011). Thus, it made sense for those courts to allow the Secretary's approval process to take its course.  Here, in contrast, there is no request pending before CMS. Thus, this Court should disregard this argument.

## VII. THE DISTRICT COURT CORRECTLY HELD THAT THHSC VIOLATED PLAINTIFFS' DUE PROCESS RIGHTS.

The district court correctly found that THHSC's policy exclusion of power wheelchairs with standing features, in conjunction with its fair hearing rules, results in hearings in which a decision against Medicaid coverage of this DME is a foregone conclusion. In Medicaid hearings concerning excluded items of DME, THHSC's hearing officers must apply the exclusion policy and sustain TMHP's denial, without regard to the beneficiary's individual circumstances. In contrast, when DME is denied for other reasons, such as medical necessity, THHSC's hearing officers can review whether the requested item meets the state's definition of DME and whether the beneficiary has a medical need for the equipment. Based upon the evidence presented, the hearing officer can reverse the denial of DME. This is precisely the meaningful hearing that due process requires THHSC to provide to all beneficiaries but denies to those seeking DME excluded by policy.

As the district court correctly held, THHSC's hearing decisions and the sworn declarations of THHSC's Special Counsel and Senior DME Policy Analyst demonstrate that "THHSC's rules and policies regarding mobile standers do not meet the due process requirements of the Fourteenth Amendment and the Medicaid Act." (USCA5 829). According to the court, "THHSC cannot unlawfully characterize mobile standers as non-covered and then foreclose any further

47

consideration of the coverage question, including the issue of medical necessity, in a hearing by requiring that the same unlawful policy be followed." (USCA5 829)

On appeal, the Commissioner argues that Plaintiffs: (1) are complaining about the substantive scope of DME coverage and not about procedures; (2) were required to use THHSC's "fair-hearing and judicial review mechanisms"; and (3) do not have a property interest in their Medicaid benefits.

The Commissioner did not raise the first and third arguments in the district court and cannot do so now. *See* p. 15, *supra*. Additionally, the Commissioner offers evidence of THHSC's new "exceptional circumstances" policy, of which the district court had no knowledge because it became effective one month *after* the court's decision. This policy has no bearing on the correctness of the district's court's decision and no place in this appeal. Finally, the Commissioner's remaining argument is unsupported by relevant Medicaid case law.

### A.    THHSC's Policies and Procedures Violate Procedural Due Process.

The district court correctly found that Plaintiffs have a well-established constitutional and statutory procedural due process right to a *meaningful* hearing before an *impartial* decision-maker to challenge denials of Medicaid benefits. *Goldberg v. Kelly,* 397 U.S. 254, 267, 271 (1970); 42 U.S.C. § 1396a(a)(3). A meaningful hearing is one in which Medicaid beneficiaries who are denied medical equipment can establish the requested item should be covered pursuant to federal

law because it meets the state's definition of DME and is medically necessary.

THHSC's fair hearing decisions demonstrate that the only hearing available to

Plaintiffs was not a meaningful one because the outcome is predetermined.

Hearing officers must apply the policy exclusion of power wheelchairs with

standing features and sustain the denial.  1 TEX. ADMIN. CODE § 357.23(e). For

example, when TMHP denied a power wheelchair with standing feature based

upon THHSC's policy exclusion, the hearing officer concluded only that:

> The 2010 Medicaid Medical Policy Manual at Section 52 lists specific non-covered mobility aids. *Mobile standers are specifically listed as not a covered benefit of Texas Medicaid's home health services. Therefore, the agency action to deny Appellant's request for a group IV power wheelchair with power standing feature was in accordance with applicable law and policy and the action is sustained.*

(USCA5 297-301, 826-827) (emphasis added). This hearing was conducted as

required by THHSC's policy.   THHSC's Director of Appeals explained, "[i]t

appears that the hearing officer conducted this hearing in accordance with – with

the things we direct them to do." (USCA5 435-436).

In contrast, in two cases where Medicaid managed care organizations, rather

than TMHP, denied these wheelchairs based upon medical necessity and

erroneously ignored THHSC's policy exclusion, the hearing officers were able to

review the medical evidence and reverse the denials based upon the individuals'

actual medical needs.[22] (USCA5 356-379, 828)   Taken together, these three
hearing decisions demonstrate the fundamental flaw in THHSC's hearing
procedures.

The Commissioner argues, for the first time on appeal, that Plaintiffs' due
process claims "concern only the substantive scope of the State's coverage of
medical equipment."  His argument should be rejected because it was not raised
below.  Moreover, it is not borne out by the facts or the single case he cites in
support.  *Conn. Dep't of Pub. Safety v. Doe* concerns convicted sex offenders
challenging a state law mandating their inclusion in the state's sexual offender
registry without a hearing to establish they are not currently dangerous.  538 U.S. 1
(2003).   The criteria for inclusion on the list, however, did not include
dangerousness.  Thus, the Court held that procedural due process does not require
the opportunity to prove immaterial facts. *Id. at* 4.  Unlike *Doe,* Plaintiffs are not
seeking fair hearings in which to prove facts that are immaterial to their right to
medically necessary DME.  To the contrary, they seek hearings in which they can
establish the material facts that the recommended wheelchairs meet THHSC's

---

[22] The denial of these power wheelchairs with standing features based upon medical necessity
rather than THHSC's policy exclusion was likely an oversight by the managed care
organizations.  Moreover, these individuals obtained their wheelchairs based on medical
necessity and not "exceptional circumstances" as the Commissioner suggests.

DME definition and are medically necessary.    In other words, they seek fair hearings that apply the same criteria THHSC employs in other DME hearings.[23]

The Commissioner did not present any evidence that THHSC's "exceptional circumstances" rule applies to fair hearings. 1 Tex. Admin. Code § 354.1039(a)(4)(D).  Further, his assertion that THHSC's exceptional circumstances rule "is clear that mobile standers may be covered upon an exceptional showing of medical need," Appellant's Brief at 45, is wrong and belied by the sworn statements of THHSC's own witnesses.    When asked why there was no consideration of "exceptional circumstances" for Plaintiffs, TMHP's representative explained "[w]e have to apply the policy as is…*And the policy indicates that it's currently not a covered service."* (USCA5 829)  This was confirmed by THHSC's Senior Policy Analyst for DME who explained that "exceptional circumstances" are not considered when DME is expressly excluded from coverage.[24]  According to his sworn declaration:

> All DME must be prior authorized…Requests for a specific item of
> DME which is not included under the specific categories of covered
> benefits may "in exceptional circumstances be considered for payment
> when it can be medically substantiated as a part of a treatment plan

---

[23] For example, had Plaintiffs been denied a wheelchair with a seat elevation feature, rather than a standing feature, they would be afforded a fair hearing in which they could establish this wheelchair component meets the state's DME definition and is medically necessary. THHSC has no basis for refusing to apply the same criteria to the wheelchairs recommended for Plaintiffs.

[24] Mr. Perez also confirmed THHSC's policy exclusion of mobile standers - "[a] power standing system on a power wheelchair (sometimes referred to as a mobile stander or a sit-to-stand wheelchair) is not a benefit of Texas Medicaid." (USCA5 348 ¶8)

that such service would serve a specific medical purpose." ***This process does not apply to the categories of DME specifically called out as a non-covered service.***

(USCA5 350 ¶14) (emphasis added).

While THHSC had no written policy governing the consideration of exceptional circumstances before the district court issued its decision, the agency's practice was clear – exceptional circumstances were not considered when the requested item of DME is "called out as a non-covered service." The fact that THHSC developed a policy after this case was decided does not support reversal of the court's decision as to the violation of Plaintiffs' due process rights. Moreover, it is not for this Court to try to discern the meaning of THHSC's new policy or to rule on its legality. This is particularly true since this policy lacks sufficient clarity to establish the point the Commissioner attempts to make.

Put simply, THHSC's new policy cannot substitute for a meaningful fair hearing in which an impartial determination of coverage and medical necessity is made. The district court correctly determined that THHSC's policies and procedures violate Plaintiffs' due process rights and the Commissioner's new policy does not alter this conclusion.

**B.    Plaintiffs Were Not Required to "Use THHSC's Fair Hearing and Judicial Review Mechanisms."**

THHSC argued below that Plaintiffs' due process claims were barred because they did not exhaust the state's administrative procedures.  Consistent with well-established case law, the district court rejected this argument, holding that exhaustion was not required, particularly when Plaintiffs' effort to challenge THHSC's denials of mobile standers "via the hearing process would have been 'totally fruitless'." (USCA5 827)  It held that "a plaintiff need not exhaust his state administrative remedies before bringing a §1983 claim, unless Congress creates an exception." Because no such exception exists in the Medicaid Act, exhaustion is not required.  *See Curtis v. Taylor,* 625 F.2d 645, 649 (5th Cir. 1980); *Doc's Clinic, APMC v. Louisiana ex rel. Dept. of Health and Hosps.,* Civil Action No. 09-269-JJB, 2009 WL 3199192, *3 (M.D. La. Sept. 29, 2009). *See also Ledet v. Fischer,* 548 F. Supp. 775, 780 (M.D. La. 1982).  ("Actions founded upon 42 U.S.C. § 1983 are free of any requirement of exhaustion of state *judicial or administrative remedies."*)[25] *Id.* at 781 *(emphasis added).*

It is well-settled that exhaustion of administrative remedies is not required before seeking injunctive relief under 42 U.S.C. § 1983 to challenge constitutional

---

[25] While the district court may have overlooked the fact that state judicial review of Medicaid fair hearing decisions is now allowed, there is no requirement that these procedures be exhausted prior to bringing a Medicaid due process claim in federal court.  In *DeSario,* 139 F. 3d at 84-85, the Second Circuit rejected a similar argument finding that "plaintiffs were not required to exhaust their state judicial remedies before bringing suit in federal court." (citation omitted).

violations. *Patsy v. Bd. of Regents,* 457 U.S. 496 (1982). Requiring such exhaustion would be particularly inappropriate here, where it is the fairness of the hearing process itself that is at issue. Plaintiffs alleged that the Commissioner's policies and procedures thwart their access to meaningful hearings.  In this situation, requiring Plaintiffs to access a futile hearing process "serves no purpose and resembles more a scene from Kafka than a constitutional process." *Gray Panthers v. Schweiker*, 652 F.2d 146, 168 (D.C. Cir. 1980). *See also Jones v. Blinziner*, 536 F. Supp. 1181, 1202 (D. Ind. 1982) (finding Medicaid administrative hearing process would not remedy state's systemic practices).

The Commissioner's reliance upon three public employment cases is misplaced.  Unlike Plaintiffs, these employees did not challenge the legal sufficiency of the hearing processes available to them. *See Rathjen v. Litchfield,* 878 F.2d 836 (5th Cir. 1989); *Galloway v. Louisiana,* 817 F.2d 1154 (5th Cir. 1987); *Stewart v. Bailey,* 556 F.2d 281 (5th Cir. 1977). This Court should reject the Commissioner's unsupported assertions in favor of well-established case law.

### C.    Plaintiffs Have a Protected Property Interest in Their Medicaid Benefits.

It is well-established that Medicaid beneficiaries have a statutory entitlement to benefits that is protected by the Due Process Clause of the Fourteenth

Amendment.[26]  *Goldberg v. Kelly*, 397 U.S. 254 (1970)  According to the district court, "individuals who apply for or receive public assistance – for example, to obtain essential medical care – are entitled to certain due process protections, including legally sufficient notice and the opportunity for a fair hearing, when they are denied this assistance by the state."  (USCA5 823-824)  As explained in *Jonathan C. v. Hawkins,* No. CIV A 9:05-CV-43, 2006 WL 3498494,*12 (E.D. Tex. Dec. 5, 2006):

> Courts view welfare entitlement more like "property", rather than a "gratuity", and such benefits are a matter of statutory entitlement for persons qualified to receive them. Therefore, under the law, beneficiaries do, in fact, have a constitutionally protected property interest in Medicaid benefits. *(Citations omitted)*

This due process-protected property right to Medicaid services has been repeatedly enforced by the courts concerning denials, reductions, or terminations of requested services.  *See, e.g. Featherston v. Stanton*, 626 F.2d 591 (7th Cir. 1980) (holding Medicaid beneficiaries denied dental benefits entitled to procedural due process.); *McCartney v. Cansler,* 608 F. Supp. 2d 694, 699 (E.D. NC, 2009), *aff'd* 382 Fed. App'x 334 (4th Cir. 2010) (holding Medicaid beneficiaries denied disability services stated enforceable due process claims); *Ability Center of Toledo v. Lumpkin*, 808 F. Supp. 2d. 1003 (N.D. Ohio 2011) (holding individuals whose

---

[26] The Commissioner claims that *Goldberg* does not apply to initial denials of services.  He is wrong. Federal regulations implementing 42 U.S.C. § 1396a(a)(3) specifically incorporate *Goldberg's* due process requirements.  42 C.F.R. § 431.205(d).

Medicaid requests were delayed or denied entitled to due process protections.); *Fishman v. Daines*, 743 F. Supp. 2d. 127, 146 (E.D. N.Y 2010) (holding Medicaid beneficiaries stated valid due process claim concerning state's hearing dismissal policy); *Perry v. Chen*, 985 F. Supp. 1197 (D. Ariz. 1996) (holding Medicaid beneficiaries entitled to written notice and fair hearing when Medicaid services are denied); *Mayer v. Wing,* 922 F. Supp. 902 (S.D.N.Y. 1996) (holding Medicaid beneficiaries subject to reductions of home care entitled to due process protections).

While the Commissioner repeatedly asserts that Plaintiffs have no protected property interest in the receipt of Medicaid services, he cites no Medicaid case law that supports his position. Moreover, the Commissioner's alternate assertion that *Goldberg* only applies to the termination of "existing welfare benefits" is also unsupported by Medicaid case law. In *Jonathan C.*, THHSC similarly defended its unlawful hearing procedures by claiming that *Goldberg* was inapposite "because the denial is question was for authorization of payment for future benefits, not the termination of existing benefits" and thus, the plaintiff had no "protectable property interest in the requested future [ ] services. *Id* at *11-12. Finding this argument to be a "distinction without a difference" the court wholly rejected the state's defense. The result should be the same in the present case. *Accord Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004) (holding Plaintiffs have a property

interest in [Medicaid] coverage for which they hope to qualify); *Ladd v. Thomas,* 962 F. Supp. 284 (D. Conn. 1997)  (holding Medicaid beneficiaries denied DME requested through the state's prior authorization procedures must be afforded due process.)  The Commissioner's argument is baseless and should be rejected.

## VIII.  THE DISTRICT COURT'S JUDGMENT AND REMAND ARE PROPER.

The district court did nothing improper when it remanded to TMHP to determine whether a power wheelchair with standing feature is medically necessary for each Plaintiff.  Its actions are consistent with those of other courts in similar cases.  *See, e.g. Meyers v. Reagan,* 776 F. 2d at 244; *Fred C.*, 924 F. Supp. at 793; *T.L. v. Colo. Dept. of Health Care Policy & Fin.,* 42 P.3d. at 66; p. 38-39 *supra.*  Because the agency never considered whether this equipment is medically necessary, even though the district court noted that there is "substantial evidence" of medical necessity, it provided THHSC with the opportunity to do so. (USCA5 833)

The authorities cited by the Commissioner do not support his position. *District of Columbia Court of Appeals v. Feldman* stands only for the proposition that federal district courts may not review judicial determinations of a state's highest court.   460 U.S. 462, 476 (1982). In *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* the court did hold that it is not proper to remand a "case" rather than a "claim" to an agency. 195 F.3d 975, 977 (7th Cir.

1999).  But, the court also held that this was merely a technical problem and did not mean that a judgment could not be enforced. *Id.*

The Commissioner also complains that the district court remanded to TMHP, his contractor, rather than to the agency.  He has no concrete reasons why this is problematic.[27]  Even if he did, it would have been simple for the district court to amend its order, if this had been brought to its attention, but the Commissioner did not do so.  The Commissioner has provided no authority and no compelling reason to find that the district court should not have remanded this decision to the state agency's contractor.  Accordingly, the Court should disregard this argument.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that THHSC's appeal be rejected and the district court's decision be affirmed.

---

[27] The Commissioner suggests that this action is inconsistent with *Ex Parte Young*.  Appellant's Brief at 53. The *Ex Parte Young* exception allows federal courts to enjoin ongoing violations of federal law, providing only for prospective relief. 209 U.S. 123 (1908) The relief the district court ordered is not retrospective nor compensatory and therefore does not impinge on the state's sovereign immunity.

Respectfully submitted,

  /s/ Maureen O'Connell
MAUREEN O'CONNELL
Texas Bar No. 00795949
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
(512) 458-5800 Phone
(512) 458-5850 Fax
moconnell@sdlcenter.org

MARYANN OVERATH
Texas Bar No. 00786851
1404 Crestwood Rd.
Austin, Texas 78722
(512) 587.1614 Phone
(512) 597-4163 Fax
moverath@grandecom.net

SARAH JANE SOMERS
North Carolina Bar No. 33165
MARTHA JANE PERKINS
North Carolina Bar No. 09993
National Health Law Program, Inc.
101 E. Weaver St.
Carrboro, NC 27510
(919) 968-6308 Phone
(919) 968-8855 Fax
perkins@healthlaw.org
somers@healthlaw.org

LEWIS GOLINKER
New York Bar No.101819
401 East State Street, Suite 300
Ithaca, New York 14850
(607) 277-7286 Phone
(607) 277-5239 Fax
LGolinker@aol.com

*Attorneys for Appellees*

## CERTIFICATE OF SERVICE

I certify that on this 13th day of March, 2013, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the ECF system to all counsel of record:

Jonathan F. Mitchell
Rance L. Craft
Douglas D. Geyser
Michael P. Murphy
Drew L. Harris
Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1695 (Phone)
(512) 474-2697 (Fax)

*Counsel for Appellant*

　/s/ Maureen O'Connell　　　　　
MAUREEN O'CONNELL

**CERTIFICATE OF ELECTRONIC COMPLIANCE**

Counsel also certifies that on March 13, 2013, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Counsel further certifies that: (1) required privacy redactions have been made, 5TH CIR. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5TH CIR. R. 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

　/s/ Maureen O'Connell　　　　　
MAUREEN O'CONNELL

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 13,631 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word software, in Times New Roman 14-point font in text, and Times New Roman 12-point font in footnotes.

　/s/ Maureen O'Connell　　　　　　
MAUREEN O'CONNELL